Plaintiff's Name _Reno Rios_
Inmate No. _E33173 (48-9L-52)_
Address _CSP-CORCORAN-SHU_
_P.O.Box-3481_
_Corcoran, CA, 93212_

FILED

JUN 1 3 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

_Reno Rios_
(Name of Plaintiff)

_#1:12-cv-01334-SKO PC_
(Case Number)

vs.

AMENDED COMPLAINT

_Connie Gipson (WARDEN)_
_J. Wong, M.D. (CMO)_
_E. Clark, M.D. (CMO)_
_W.J. McGuinness, M.D. (CMO)_
_T. Macias, M.D. (CEO)_
_J. Obaiza, M.D. (HCM)_
_SEE page 5, 6, 7._
(Names of all Defendants)

Civil Rights Act, 42 U.S.C. § 1983, _1981,_
_2000a, 12101, 12102._
DEMAND FOR JURY TRIAL

I. **Previous Lawsuits (list all other previous or pending lawsuits on back of this form):**

A. Have you brought any other lawsuits while a prisoner? Yes ✓ No **RECEIVED**

B. If your answer to A is yes, how many? _3_
   Describe previous or pending lawsuits in the space below.
   (If more than one, use back of paper to continue outlining all lawsuits.)

   JUN 1 3 2013

   CLERK, U.S. DISTHICT COURT
   EASTERN DISTRICT OF CALIFORNIA
   BY _____
   DEPUTY CLERK

   1. Parties to previous lawsuit:

   Plaintiff _Reno Fuentes Rios_

   Defendants _Roy A. Castro et.al.,_
   _Chief Director et.al.,_
   _J. Tilton et. Al.,_

   2. Court (if Federal Court, give name of District; if State Court, give name of County)
   _U.S. Dist. Ct. of CA. EASTERN DISTRICT_

   3. Docket Number _CIV-S-00-0905_  _CIV-S-09-2349_  _2:07-cv-0790_
   4. Assigned Judge _WBS GGH_  _ALA_  _WBS KJN_

   5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
   _Two First cases dismissed one still pending_
   6. Filing date (approx.) _1). 01-19-2001_  _2). 02-06-2006_  _3). 04-25-2007_  7. Disposition date (approx.) _11-18-2002_  _11-27-2007_  _pending_

1

## II. Exhaustion of Administrative Remedies

    A.    Is there an inmate appeal or administrative remedy process available at your institution?

    Yes ✓  No ✓

    B.    Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

    Yes ✓  No___

    If your answer is no, explain why not _ONLY PART OF THE CLAIMS WAS_
_NEVER ANSWERED AFTER FILING SEVERAL GRIEVANCES_
_WITH NEGATIVE RESULTS DUE TO THE CSP- CORCORAN-SHU_
_FAILED TO PROVIDE A RELIABLE APPEALS SYSTEM DUE_
_TO CONSTANTLY CHANGING HIS APPEALS COORDINATORS AND_
_INMATES GRIEVANCES ARE NOT PROPERLY MONITORED._

    C.    Is the process completed?

    Yes ✓    If your answer is yes, briefly explain what happened at each level.
_EACH LEVEL DENIED TO CORRECT THE ACTIONS HERE_
_DESCRIBED AND TO PROMPT PROVIDE THE RELIEF REQUESTED_
_BECAUSE MOST OF APPEAL'S WERE LOST OR DESTROYED OR NEVER_
_ANSWERED OR PROCESSED DUE TO THE UNRELIABLE APPEALS SYSTEM._
    No___    If your answer is no, explain why not.
_SINCE PLAINTIFF ARRIVED TO CSP-CORCORAN-SHU_
_THE WARDENS AND APPEALS COORDINATORS ARE OR WERE_
_CONSTANTLY CHANGED/REPLACED AS A RESULT MOST_
_OF PLAINTIFF GRIEVANCES WERE NEVER ANSWERED OR_
_PROCESSED OR DESTROYED SEE PAGE 19-20._

**NOTICE:**    Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

## III. Defendants

    (In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

    A.    Defendant _SEE PAGE 5, 6, 7,_ is employed as _SEE PAGE 5, 6, 7._
                               at _____

2

B. Additional defendants _SEE page 5, 6, 7._

## IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

_INTRODUCTION OF THE CLAIMS_

1. plaintiff Reno Rios E33173 filing the instant action in propia persona within the meaning of 42 U.S.C. Section 1983, 1981, 2000a, 12101, and 12102. To redress defendants Actions under Color of state law. In violation of the First, Eighth, and Fourteenth Amendment of the united states Constitution.

2. Defendants involved in the instant action had have maliciously and sadistically violated plaintiff's Constitutional rights and directly and proximately caused and will continue to cause the future the irreparable damage and injury to plaintiff's health care condition which constantly defendants ignored, (SEE continue page 4 and 7 thru 20)

## V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

_SEE page 23 thru 25._

I declare under penalty of perjury that the foregoing is true and correct.

Date _June 10, 2013_          Signature of Plaintiff _Reno Rios E33173_
                                                    _In pro se_

(revised 2/10/2006)

3

# IV. INTRODUCTION CONTINUE

3 - to plaintiff serious medical and disability conditions, in a retaliatory and discriminatory manner within a deliberated indifference to his needs.

4. plaintiff languish, typically alone, in a cramped concrete, windowless cell for 22 and one-half to 24 hours every day suffering the inhumane medical conditions with severe pain, anguish, and stress as a result of defendants actions, practices, policies, regulations, procedures, operations, customs, conditions, and grossly illegal, unconstitutional insufficient, inadequate, inappropriate, medical service that has deprived plaintiff of his constitutional privilege and rights to enjoyment of life.

5. Defendant involved in this action acted in concert beyond scope of their proper duties and breached their fiduciary responsibility to provide a reliable procedures, policy, regulations, health care service, treatment, and system which not subjected plaintiff to retaliation, discrimination merely because plaintiff is validated as a prison gang associate not provided by any evidentiary basis, or because plaintiff is housed in security Housing unit (SHU) or because their budgetary can not sufficiently cover a complete health care service as defined American with disability Act (ADA).

6. specifically Defendant Connie Gipson Maliciously and sadisticly refused or failed to provide a reliable appeals system to properly and effectively redress the wrongs here described and the inhumane SHU conditions and to provide effective dental clinic or procedures which adequately treat inmates serious denture and artificial replacement to adequately chew and eat their daily food without delaying their treatment.

4

# V. JURISDICTION AND VENUE

7. plaintiff bring this action pursuant to 42 u.s.c. Section 1983, 1981, and the meaning of Section 2000a, 12101, and 12102, to redress the deprivation under color of state law of rights secure by first, eighth, and fourteenth amendment of the united states Constitution.

8. This court has the proper jurisdiction for claims seeking declaratory and injuctive relief pursuant to 28 u.s.c. Section 1331 and 1343.

9. This court also has pending jurisdiction over the state claims pursuant to 28 u.s.c. section 1367.

10. The substantial unlawful acts of the events or omissions given rise to the claims and majority of defendants reside within this district pursuant to 28 usc. section 1391 (b). plaintiff request jury trial on these allegations.

# VI. PARTIES

11. plaintiff Reno Rios e33173 is a 49 years old state prisoner confined in the California state prison of Corcoran-security housing unit (csp-cor-shu) serving a life sentence since 1989.

12. on february 15, 2007 plaintiff was placed in the csp-cor-shu, for administrative purposes alleging that plaintiff is a prison gang associate with the mexican mafia (eme). This case is pending for jury trial Rios v. Tilton et. al., u.s. eastern dist. of ca. case# 2:07-cv-0790 wbs kjn.

13. during the period of time relevant to this action csp-corcoran-shu, constantly had changed their wardens and appeals coordinators and chief medical officers unknown does will be sued by their fictitious names. defendant connie gipson, is the currently warden of csp-cor-shu, and she should know or was aware of the actions stated here in this complain and failed or refused to corrected or prevented as described herein.

5

14. Defendant Connie Gipson, has caused, authorized, condoned ratified, approved, or knowingly, acquiesced in the illegal, unconstitutional, and inhuman conditions, actions, policies, customs, regulations, operational procedures, practices, that prevail in csp-corcoran-security Housing unit, as stated in this complaint. She has therefore, directly and proximately caused, and will continue to cause in the future, the injuries and violations of rights set forth in this action. Defendant Connie Gipson is sued in her official capacity only.

15. During the period of time relevant to this action defendants William J. McGuinness M.D., Edgard Clark, M.D. and J. Wong, held the rank of chief medical officer (cmo) at csp-corcoran-shu, and defendant Teresa Macias M.D. held the rank of chief executive officer (CEO) and defendant Joseph Obaiza, held the rank of Health care manager (HCM) at csp-corcoran-shu. each of them as such caused, supervised, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal unconstitutional and inhuman condition and adequate inappropriate, defective insufficient health care treatment, medication, to plaintiff serious chronic medical condition and injuries while confined in csp-cor-shu. each of them therefore directly and proximately caused and will continue to cause in the future the damage and injuries and violations of rights set forth in this action. each of them are sued in their individual and official capacity.

16. During the period of time relevant to this action defendants, J. Neubarth M.D., J. Kim, M.D., Nereddy M.D., A. Liberstein M.D., H. N. Nguyen-Do, M.D., p. Rouch FNP, and Sisodia p.A. Held the rank of physicians and medical practitioners at csp-corcoran-shu. each of them acted in concert in the illegal unconstitutional inhumane condition and grossly inadequate, insufficient, ineffective, recommendations, medication, health care treatment to plaintiff serious pain, and medical conditions. each of them therefore directly and proximately caused authorized, condoned, ratified, approved, or knowingly

6

acquiesced in the illegal unconstitutional and inhuman treatment to plaintiff's disability and serious conditions. And will continues to caused in the future the injuries and damages suffering in violation of rights set forth in this action. Each of them are sued in their individual and official employment capacity.

17. During the period of time relevant to this action Defendants Robert S. Pringle DDS. and David Shampain c.f. held the rank as Dentist Supervisor hereat CSP-COR-SHU, and Defendant Briggs M.D. held the rank as Dentist at CSP-Corcoran-SHU, each of them as such caused, supervised authorized, condoned, ratified, approved or knowingly acquiesced in the illegal unconstitutional and inhumane conditions to plaintiff serious denture conditions as described in this complaint. Each of them therefore directly and proximately maliciously and sadisticly caused and continue to cause in the future the damage and injuries and violations of rights set forth in this action. Each of them are sued in their individual and official duties capacity.

VII.   FACTUAL ALLEGATION

2.   Facts pertaining plaintiff chronic conditions

18.   On February 15, 2007 plaintiff was transfered to CSP-Corcoran-SHU, to serve an indeterminate SHU sentence and since he arrived to CSP-Corcoran-SHU, he has being endure the inhumane SHU conditions.

19.   Plaintiff suffers from allergies/asthma, since he was a childhood and since he arrived to CSP-COR-SHU, he has being addressing his concerns to several unknown physicians and to defendant's E. Clark, J. Kim, J. Neubarth, A. Liberstain P. Rouch, Sisodia, H.N. Nguyen-Do because they refused to provide similar medication provided by other facilities from the prison were plaintiff was transfered.

7

20. As plaintiff was scheduled to several medical reviews with defendants at paragraph 19. plaintiff explained to each of defendants that plaintiff suffers from asthma since he was a childhood and he has to used the inhaler to control his asthma attacks more often due to csp-cor-shu, does not provide adequate ventilation inside the cells and that csp-corcoran-shu, wardens ignored this by not allowing inmates to purchase their own fan unless is approved by chief medical officer for medical conditions. Defendants constantly refused to recommend plaintiff to have his own fan as he used to be allowed by other facilities. Instead of defendants on paragraph recommending plaintiff to be allowed to purchase his own fan to adequately have air in his cell to prevent asthma attacks they maliciously and sadisticly changed plaintiff's inhaler with an inhaler that cannot be exchanged every month as the previous he used to have and denied the previous medication that was working better for a worse inhaler that can be exchanged only every nity (90) days.

21. Defendants on paragraph 19, stated that plaintiff can survive with what they have recommended because, they budgetary can not allowed them to properly prescribe the adequate medication as they used to do before. unless plaintiff debrief from being validated as a prison gang he can get out from shu and allowed better attention.

22. As a result of defendants w. J. McGuinness, M.D. E. Clark, M.D. J. wong, M.D. (cmo) supervisors constantly denying plaintiff's grievances and to approved the adequate medication. plaintiff has to endure the asthma attacks seating down by his bunk the whole night on several occasions due to he has run out of medication and he cannot laydown during the asthma attacks.

23. Since plaintiff arrived to csp-cor-shu, he has several visits interviews with defendants in paragraph 19 and 22, and had requested to prescribed same allergy medication; prescribed by other prisons facilities to prevent allergies

8

due to the fact that previous medication was working well and when plaintiff have allergies his asthma attack's getting worse. But defendants on paragraph 19 and 22, constantly denied.

24. plaintiff's suffers from dry skin every time he shower which causing him a severe itching to his body and previous physicians in other facilities have prescribed an special medical lotion for his body due to facilities don't provide or sell lotion or skin care lotion in their facilities. At several interviews with defendants at paragraph 19, constantly denied plaintiff's requests and refused to allowed plaintiff to order in his package.

b. Facts pertaining plaintiff severe pain condition.

25. On several occasions plaintiff was interviewed by defendants J. Kim, E. Clark, J. Neubarth, A. Rouch, Nareddy, H.N. Neuyen-do, Sisodia PA., in regard to plaintiff chronic conditions and severe nerve pain and denied to prescribe the adequate effective medication by alleging that plaintiff is not dying and that he can survive with the medication the have prescribed.

26. plaintiff constantly explained to each defendant in paragraph 25 that on may 12, 1998 plaintiff suffered a serious incident at which he sustained approximately 20 stabb wounds that has damaged his arms and shoulder nerves and subjected to an unnecessary surgery were his gallbladder was removed and experienced a severe pain in his nerves and constantly prescribed ineffective medication to control the pain as a punish for being in the SHU without any legitimate penological justification in discriminatory manner merely because plaintiff's is not dying.

27. plaintiff constantly explained to defendants in paragraph 25 that plaintiff constantly suffers from souiness after eating several different food's since his gallbladder was removed but defendants alleged that it was normal and refused to provided a digestive medication.

9

28. On April 2010 plaintiff was doing exercise and fell down and slipped over his left arm and damaged his left arm and shoulder nerves through his dislocated elbow. Since April 2010 plaintiff explained to each defendant in paragraph 25 and unknown physicians that have scheduled plaintiff for interview that plaintiff couldnot sleep some times atnight due to the severe pain that he has to endure every day and that the defficient medication prescribed to control his nerve pain was not controlling the nerve pain and that plaintiff has to drink too many pills in order could verly control the severe muscle nerve pain which was continuous.

29. Defendants in paragraph 25 constantly conducted meaningless interviews with negative results and continuously prescibing ineffective pain relief medication over and over changing the prescription on same rotating medication which they already knew it was prescribed before with negative result; ibuprofen, salsalatin, tylenols, naproxen, acetaninophen, carbamazepine which not only caused plaintiff other side effects but such medication was not controlling his severe nerve pain. Defendant's in paragraph 25 alleged that due to they budget cannot recommend the appropriat medication because the chief medical officer and chief executive officer and health care manager not allowed them to prescribe the properly medication specially for nerve damages because is too expensed and the CDCR is trying to save money that's why they have reduced the prescription of morphine, tylenols-3, vycodine, neurontine or methadone, to most inmates which is the appropriate medication for nerve damage relief.

30. Defendants in paragraph 25 and unknown other physicians alleged that only way plaintiff can get the appropriate medication to relief his nerve pain on his shoulder and arm is by debriefing from being validated as a prison gang then plaintiff can be placed in general population were he will get strong pain relief medication and better medical treatment.

10

31. On January 26, 2011 plaintiff was interviewed by defendant A. Liberstein in regard to plaintiff 602 appeal Log # COR-09-11-10108, and explained why they were conducting all these meaningless interviews and not providing plaintiff with the adequate medication and reasonable accommodation to his serious conditions and defendant A. Liberstein stated that only if plaintiff is real sick and dying, they may prescribe some strong pain relief medication like Tylenol-3, morphine, neusontine or methadone other than that plaintiff has to endure his pain and conditions in SHU until he get out to main line or parole from prison.

32. On March 14, 2011 defendant E. Clark and Teresa Macias approved defendants on paragraph 25 actions and refused to recomend plaintiff for MRI to review what was wrong with his nerve damage instead defendant recommended plaintiff for X-Ray. even known that plaintiff never complained to fracturing his arm and constantly recommended an X-Ray instead than MRI. Because X-Ray did not reflect when nerves are damaged so it was unnecessary to take too much X-Rays. defendants lacked my legitimate penological justification to denied plaintiffs adequate medication.

C. Facts pertaining plaintiff hearing impairment.

33. On May 24, 2010 Audiology specialist Johnson conducted a test to plaintiff hearing problem that plaintiff has experienced lately as he was getting old and discovered that plaintiff suffers from hearing impairment and defendants in paragraph 25 took too long to recommend him to see the Audiologist specialist. After several visits with Audiology specialist Johnson he provided sufficient devices to plaintiff hearing impairment such as hearing aids and pocket talket and a headphones to adequately hear his television set and avoid wasting too much batteries while he is in his cell due to the fact that CSP-COR-SHU, does

11

1  not allowed inmates to purchased their own headphones
2  or extensions or appliances for hearing impairment inmates.
3  however Specialist Johnson stated that he can not replaced
4  plaintiff with a new set of headphones if those he
5  provided broken because Defendant Teresa Macias
6  and Edgard Clark, and J. wong not allowed him to
7  replaced them, and that plaintiff need to be approved
8  by them First So he can purchased through approved
9  vendors because the institution does not allowed to
10 purchased headphones only earbuds but plaintiff could
11 not adequately used earbuds due to he used two
12 hearing aids and these earbuds allowed in SHU are too
13 deficient. plaintiff constantly requested to defendants
14 in paragraph 25 recommend plaintiff to order his
15 headphones clear plastic construction or to accommodate
16 him with similar as those he was allowed to have.
17 Defendants in paragraph 25 stated that plaintiff
18 must be crazy to asking for stuff like this that
19 they will not recommend plaintiff to purchase stuff
20 like that or accommodate him with that because the
21 defendants T. Macias, J. wong will not approved
22 that and plaintiff has to lived with what he has due
23 to he is not dying and he is in SHU he cannot be
24 accommoted with that kind of medical devise.

## d. FACTS PERTAINING PLAINTIFF PLANTAR DISABILITY.

34. on February 6, 1997 while plaintiff was at High
desert state prison he was evaluated by specialist G.
Gilkes M.D. and chief physician and Surgeon C. Hooper
M.D. and have discovered on plaintiff's foot a history
of bilateral plantar fascitis in his foot and had
recommended to wear his personal special shoes and
allowed him to purchased through approved vendors.

35. on September 20, 2002 while plaintiff was
confined in CSP-SACRAMENTO Specialist physician J.R.
Wedell M.D. Also recommended to allowed plaintiff
to wear his Special Shoes due to his plantar Condition

12

36. Since plaintiff arrived to csp-colcoran-shu he requested to allowed him purchased his personal special shoes or to provided him with a special booths or shoes which accommodate him his disability due to he experienced a severe pain in his plantas nerves for which he could not stand too long. Defendants, J. Neubarth, J. Kim, and E. Clark constantly refused to recommend plaintiff with the podiatrics and/or orthopedics to evaluate plaintiff in regard with his plantas pain and fasciitis, by alleging that plaintiff does not look like he is dying, and that he can survive until he deliver from been validated as a prison gang and released from shu then he can get every thing he needs.

37. Defendants in paragraph 36, constantly refused to considere the previous evaluations by the podiatrics and foot specialists from previous facilities on same state prisons by alleging that they not obliged to considered other previous physicians or specialists evaluations or recommendations because they do their own evaluations and they tried to save as much money they can due to budgetary crisis and not make this kind of recommendations because plaintiff is not dying.

38. On May 12, 2008 approximately defendant J. Kim, M.D. recommended plaintiff to see the podiatric's specialist and podiatric's specialist recommended to accommodate plaintiff with his prosthetics boots.

39. On several interviews with defendants in paragraph 36 and defendant's H. N. Nguyen-Do, J. Neubarth, nereddy, M.D., p. Rouch Fnp. A. Liberstein, Sisodia A.A. constantly interviewed plaintiff and unknown physicians in regard to rescheduled him to see the orthopedic's or podiatric's to exchange his defective boots and or allowed him to purchase the appropriate boots or shoes which does not caused pain in his plantas nerves. Defendant's constantly denied his requests by stating that plaintiff is not dying that he can survive with what he has until he get out from shu.

13

40. Defendants in paragraph 39 recommended the same medication he was getting for his nerve damage to relief his foot pain and alleged he already was provided with boot's on october 15 2008 and that those boot's could not be exchanged until plaintiff get out from SHU. And constantly denied him to see the orthopedic's to accommodate him with the appropriate size of boots.

## E. FACTS PERTAINING TO PLAINTIFFS VISION CONDITION.

41. On April 19, 2004 while plaintiff was housed in general population he was diagnostic with cataract or possible glaucoma for which ophthalmology specialist Charles F. Crapotta, M.D. recommended plaintiff to wear dark glasses to prevent the brightness of the sun.

42. Since plaintiff arrived to csp-corcoran-SHU, plaintiff was denied to wear dark glasses merely because inmates in SHU were not allowed to wear or purchase or provided dark glasses.

43. Since February 15, 2007 As plaintiff arrived to csp-cor-SHU, defendants E. Clark, Joseph Obaiza, W. J. McGuinness M.D.; J. Neubarth, J. Kim, T. Macias, and unknown physicians conducted several interviews and constantly denied to recommend plaintiff to be allowed to wear dark glasses to protect his eyes from the sun every time he was outside the building and inside the cell due to inmates in csp-cor-SHU, are enforced to endure the bright light the 24 hours inside their cell when they are in the cell and cannot cover their light because they will be issued a serious rule violation Report and placed them in property restrain due to staff has the control to turn own and off the cell lights.

44. On several interviews with defendants in paragraph 43, plaintiff constantly requested defendants to allowed plaintiff to allowed purchase his own dark glasses to protect his eyes and allowed him to have the control of his

14

own cell lights because most of the time staff did not turn off the bright light all night long in purpose to punish inmates without any reliable legitimate penological justification.

45. Defendants in paragraph 43, constantly refused to allowed plaintiff to have his switch to turn onn and off his cell lights as othe SHU Facilities.
Defendants constantly denying his request merely because defendants alleged that plaintiff is not dying and that he will survive until he will be released from SHU.

46. On February 19, 2010 The Ophthalmology specialist S. J. Sofinski, M.D. diagnostic plaintiff with glaucomia and recommended transitional bifocal eye glasses due to defendants W. J. McGuinness, M.D., E. Clark, M.D. T. Macias, M.D., Joseph Obaiza, M.D. And J. Wong and C. Gipson does not allowed Sunglasses in SHU And do not allowed inmate in csp-cotcoran-SHU, to have their switch to turn onn and off their cell light like other SHU Facilities.

47. Defendants in paragraph 43 and 46 lacked legitimate penological justification by not allowing plaintiff to have his own switch in his cell to turn onn and off his cell lights as need it during the time he is in SHU.

F. FACTS PERTAINING TO PLAINTIFF DENTAL CONDITION

48. Since plaintiff was confined to the state prison to serve his life sentence he was constantly denied to have his yearly clean up to his teeth because the cdcr does not provide effective dental treatment unless is an emergency or inmates have to wait a long list the dentist has, because the facilities only have one dentist for facility and they have priority reviews instead conducting cleaning inmates teeth, unless plaintiff required to extracted his tooth.

15.

49. However several years after plaintiff is been confined on several CDCR prison facilities several of his tooth was extracted instead of receiving the adequate dental treatment to prevent caries or cavity, or to be extracted.

50. As plaintiff was transfered to CSP-corcoran-SHU, he was scheduled to see the dentist and have several examinations to his teeth due to plaintiff extracted his central incisor tooth and experienced gum damage and severe infection at which plaintiff left side molar was extracted.

51. On November 16, 2009 Dentist Choung conducted an X-RAY to plaintiff teeth and on March/09, 2010 dentist berry made an extimation to plaintiff teeth and recommended for a partial Artificial tooth replacement. On June 03, 2010 dentist Eerstel stated that plaintiff partial was defective and that he will recommend to re-issued a new one when the next central incisor tooth is extracted.

52. Due to the partial was deficient plaintiff extracted his second central incisor and asked for repair of his partial.

53. On March 11, 2011 defendant Briggs interviewed plaintiff and conducted several other evaluations and denied to recommend plaintiff for a partial artificial tooth replacement unless four other tooth were extracted because eventually those four tooth will need to be extracted in the future and by extracting plaintiff teeth the CDCR will safe money to treat his teeth and constantly visits to the dentist.

54. On January 11, 2012 plaintiff agreed to extracted only one molar to his left side because it was lose and refused to extracted the rest of the three teeth because he didn't have any problem with them.

16

55. On several interviews with defendant Briggs he alleged that eventually in a few year's plaintiff would have no other choice other than to extracted his teeth and why he has to wait when he could done it right now and avoid too much dental treatment.

56. Since defendant Briggs was assigned to review plaintiff denture, plaintiff explained that the previous dentist knew that the partial provided to plaintiff was defective and suppost to be replaced.

57. On the several interviews conducted by defendant Briggs he alleged that the warden of csp-cor-shu, does not allowed them to provide artificial tooth replacement to inmates unless those tooth that may need to be extracted in a few years later, were extracted.

58. On the several interviews that plaintiff had with defendant Briggs he explained that plaintiff has only two molars on his right side to chew his daily food and by extracting those molars plaintiff then will have nothing to chew his daily food and due to that fact he needs to first implant an artificial molars to his left side so he can chew his daily food due to the institution will takes approximately ninety (90) through 120 day's to issued inmates artificial tooth partials and plaintiff would have no molars to chew his daily food. Defendant Briggs sadistically stated that the state food is soft and he don't need to chewed and if other prisoners have been survived plaintiff can survive without dying.

59. Defendant Briggs constantly denied plaintiff to have a partial unless several of his teeth were extracted and denied to recommend plaintiff for tooth implants because csp-cor-shu, warden does not allowed them to make those recommendations due to the budgetary crisis and plaintiff can survive

until he gets out from the SHU, or be release to main line were such facilities will provide tooth implants due to csp-cor-shu, does not have a dental clinic for that kind of process and the warden does not approved outside prison dental treatment.

60. on March 26, 2012 plaintiff was interviewed by defendant D. Shampain C.F. Dentist and explained his situation that plaintiff could not adequately chew his daily food, snacks, and fruits. So he could recommend plaintiff for artificial tooth implant. Defendant ignored plaintiff by alleging that due to perez v. Tilton et. al, case they were not allowed to conduct implants to inmates teeth.

61. plaintiff explained to defendant D. Shampain the same thing that was explained to defendants Briggs in paragraph 58. Defendant D. Shampain stated that soon or later plaintiff will have no other choice other than extracted the rest of his molars and teeth and then will have no choice other than accept the csp-cor-shu procedures and for now he will not recommend for artificial implant.

62. on May 11, 2012 defendant R.S. pringle, DDS., interviewed plaintiff in regard to plaintiffs grievance log# COR-HC-12049729 and fully explained the same thing explained to defendants D. champain, and Briggs that how it was possible that they wanna extracted the only molar he uses to chew his daily food, merely because they refused to implant the molars in his left side first and sadistcly leaving plaintiff with no molars as the only resource to accommodate him with adequate artificial teeth replacement.

63. on May 11, 2012 defendant R.S. pringle DDS, stated that he agreed with defendants Briggs and D. Shampain decision and that soon or later plaintiff will have no other choice but to let them extracted those teeth that eventually will be extracted

/8

soon or later in a few years or when plaintiff
will started having problems with his tooth.

64. As a result of defendants actions the chief
office of third level appeals – Health Care L.D. Zamora
refused to processed plaintiffs 602 grievances
Log# COR-HC-12049729, CSPC-6-12-00859 within a
retaliatory and unreasonable denial and delaying
the process to prevent plaintiff to take this case to
the Courts and obliged him to extract his only molar
he uses to chew his daily food. Defendants lacked
any legitimate penological justification to denied
plaintiff tooth implants to his missing teeth.

## G. FACTS PERTAINING THE CSP-COR-SHU, UNRELIABLE APPEALS SYSTEM.

65. Since plaintiff arrived to CSP-COSCOSAN-SHU,
he has filed several CDC-602 grievances challenging
the severe inhumane SHU conditions and complaints
against the CSP-COR-SHU, wardens for failing to
provide a reliable appeals system at which most of
plaintiffs grievances filed against administrative
administrators were improperly screening out
or never responded or destroyed because inmates
are not allowed to photocopy their CDC-602 appeal
unless they were exhausted all administrative levels
as a result inmates grievances challenging medical
or SHU conditions are unreasonable screened out
or not processed or destroyed because CSP-COR-SHU,
does not provide a reliable track system which
accurately monitor the limitations when inmates
submitted them and when such grievances were
in fact delivered to the inmates, or loged by staff.

66. Defendant Connie Gipson knew or should have
known that her assigned appeals coordinators breached
their fiduciary duties beyond scope of their proper
duties by constantly refusing to process inmates appeals

19

67. plaintiff has been filed several CDC-602 grievances to redress the wrongs here described and only few were processed because the unreliable appeals system.

68. Defendant C. Gipson and the several other wardens constantly refused to correct this problem for which plaintiff was participating con constantly peaceful hunger strikes with negative results.

## VIII. CAUSES OF ACTION FOR RELIEF

### A. PLAINTIFF WAS SUBJECTED TO CRUEL UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

69. plaintiff realleges and incorporates by references each paragraphs 1 through 68 as though they were stated fully herein.

70. Defendants Connie Gipson, J. Wong, E. Clark, W.J. McGuinness, T. Macias, J. Obaiza, R.S. Pringle, J. Kim, J. Neubarth, Nereddy, A. Liberstein, Si Sodia, P. Rouch, H.N. Nguyen-Do, D. Shampain, Briggs; and unknow does that have interviewed or reviewed plaintiff claims. violated plaintiff's eighth amendment of the U.S. Constitution within a deliberate indifference to his needs as follows:

a. By constantly denying accurate health care treatment to plaintiff serious chronic asthma condition and by constantly changing his asthma inhaler's and not providing adequate air ventilation in SHU cells and refused to allowed plaintiff to purchase his own ventilation fan.

b. By refusing to accommodate plaintiff with headphones to adequately hear his television while he is in cell or allowing him to purchased his own clear plastic construction.

c. By constantly refusing to compost with the American with Disability Act, to plaintiff disabilities.

d. By refusing to provided the adequate medication to relief his severe nerve pain.

e. By refusing to provide tooth implants to his several missing teeth before extracting more teeths;

20

f. By refusing to allowed plaintiff to have the control switch to turn onn and off his cell lights.

g. By refusing to accommodate plaintiff with special booths or special shoes that adequately conform his need or allowed him to purchase his own through approved vendor.

h. By refusing to provided a medical lotion or oil to prevent itching plaintiff's dry skin;

i. By refusing to provide similar medication or medication which has been curing his condition in the past.

Including defendants incharge to csp-cor-shu, conditions.

B. DEFENDANTS DENIED PLAINTIFF DUE PROCESS RIGHTS UNDER FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

71. plaintiff realleges and incorporates by references each paragraphs 1 through 68 as though they were stated fully herein.

72. Defendants in paragraph 70, and unknown Does, that are involved in this action and those in charge of csp-corcoran-shu, to plaintiff's health care condition and administrative conditions and those that have interviewed plaintiff or have reviewed plaintiff's claims and those who knew or was aware of plaintiffs claims violated his due process rights in accordance with 14th Amendment of the u.s. constitution as follows:

a). By refusing to provide sufficient medication to his serious asthma condition.

b). By refusing to provide adequate ventilation inside the cells at csp-corcoran-shu.

c). By refusing to allowed plaintiff to purchased his own ventilation fan.

d). By refusing to provide or accommodate plaintiff with headphones to adequately hear his television set, or

e). By refusing to allowed plaintiff to purchased his own clear plastic construction headphones through approved vendor;

21

F). By constantly refusing to reasonable accommodate plaintiff in accordance with the American with disability act.

g). By refusing to provide adequate medication that efficiently relief plaintiff severe nerve pain.

h). By refusing to reasonable accommodate plaintiff with tooth implant before extracting more teeth, and to adequately eat and chew his food.

i). By refusing to allowed him to have the switch control onn and off of his cell lights as other SHU facilities.

j). By refusing to exchange or accommodate plaintiff with the adequate prosthetics/orthopedic's boots, or special shoes that conform to his need. or

k). By refusing to allowed plaintiff to purchased his own bootths or special shoes that conform to his need via approved vendor.

l). By refusing to reasonable accommodate plaintiff with medical lotion or oil which relief plaintiff itching every time he shower due to his dry skin. or

m). refusing to allowed plaintiff to purchase his own via approve vendors.

n). By refusing to provide similar medication as other facilities provided in the past that has curing and controlling plaintiff's medical conditions and pain.

o). By refusing to provided a reliable appeals system which accurately monitor log, when inmates filed their grievances and when their received them, and by refusing to allowed inmates photocopy their grievances CDCR-602 appeals before filing them.

p). By discriminating and punishing plaintiff to received adequate and sufficient medical treatment merely because he is in the SHU validated as a prison gang associate and unless plaintiff debrief's.

q). By maliciously and sadistically refusing to provide, accommodate, plaintiff with adequate and sufficient medication to relief his serious health conditions within a deliberate indifference to his medical needs and serious disabilities.

22

## IX.  CAUSATIONS

As directed and proximate of the afforementioned acts and omissions on the part of defendants, plaintiff has suffered and continues to suffer general and special damagess in an amount to be proven at trial.

plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. plaintiff has been and will continue to be irreparably injured by the conduct of defendants unless the court grants the declaratory and injunctive relief which plaintiff seeks.

## X.  PLAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays the following relief:

1. A declaratory judgment that the defendants acts and practices described herein violate plaintiff's rights as herein stated.

2. A preliminary and permanent injunction which prohibits and requires that defendants, their agents, employees, and successors:

(i) Cease the practice of denying plaintiff adequate and sufficient medical treatment to his serious health care conditions and disabilities;

(ii) Cease the practice of conducting a meaningless medical interviews by constantly ignoring plaintiff's serious health care conditions and disabilities.

(iii) Cease the practice of constantly refusing to recommend plaintiff with the appropriate specialist in charge to review or evaluate plaintiff medical conditions;

(iv) Cease the practice of constantly refusing to provide approve, or recommend the appropriate medication to relief his severe nerve pain;

(v) Cease the practice of refusing to provide or approve or recommend sufficient medication to prevent asthma attacks and pain relief;

23

(vi) Cease the practice of refusing to comport with the American with Disability Act to plaintiff needs merely because he is confined in the SHU, and validated as a prison gang associate or unless plaintiff debrief from being validated;

(vii) Cease the practice of refusing to accommodate plaintiff with a new prosthetics/orthopedics boots or special shoes that conform to his need or allowing him to purchasing his own from approved vendors.

(viii) Cease the practice of constantly refusing to provide adequate ventilation inside the cells;

(ix) Cease the practice of refusing to allowed plaintiff purchase his own clear plastic construction fan to properly circulate ventilation in his cell and prevent asthma attacks;

(x) Cease the practice of refusing to accommodate plaintiff with headphones to adequately hear his television or allowe him to purchase his own clear plastic construction;

(xi) Cease the practice of refusing to allowed plaintiff to have the switch control onn and off for his cell lights;

(xii) Cease the practice of refusing to provide plaintiff with sunglasses or darkglasses to protect his eyes from the brightness of the sun.

(xiii) Cease the practice of refusing to accommodate plaintiff with medical lotion or oil to his dry skin itching or allowed him to purchase his own via approved vendors;

(xiv) Cease the practice of refusing to accommodate plaintiff with artificial teeth implants before extracting his teeth/molars;

(xv) Cease the practice of refusing to provided a reliable appeals system for inmates grievances which accurately monitor when inmates submitted their CDCR-602 grievances and when their CDCR-602 grievances were delivered or handed to the inmate to ensure inmates grievances are not destroyed or never loged or processed or responded;

24

3. Compensatory damages according to proof from each defendant that maliciously and sadistically refused to adequately provide the appropriate medication to relief plaintiff's severe nerve pain and sufficient medication to prevent asthma attacks;

4. Compensatory damage to cover plaintiff's mental anguish and stress as a result of defendants constantly refusing to prescribed the appropriate medication to control his severe pain.

5. Punitive damages of $25.000, from each defendant found to have intentionally denied plaintiff's rights.

6. Plaintiff cost of suit.

7. For cost and reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and any other grounds authorized by law.

8. Compensatory damages and punitive damage special and general according to proof from each defendant that knew or should have known about plaintiff's serious conditions as established in the American with Disability Act 42 U.S.C. Section 12101, and 12102 and neglected or refused to obeyed.

9. Demand for jury trial, including, to the extent that legitimate security concerns dictate, in judicial proceedings regarding the specific factual grounds that purportedly justify plaintiff's refusal to accommodate him pursuant to ADA.

10. Such further relief as the court deems proper.

DATED: JUNE 10, 2013

Respectfully Submitted

Reno Rios E33173

Reno Rios E33173
In propia persona

25

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY
CASE 1:12-CV-01334 SKO PC

(Fed. R. Civ. P.5; 28 U.S.C. 1746)

I, _Reno Rios E33173_ , declare that I am over

18 years of age and a party to this action. I am a resident of: _California state prison_

_of Corcoran — security Housing unit (CSP-COR-SHU)_

In the County of: _Kings_

State of California. My prison address is : _Reno Rios E33173_

_CSP-Corcoran — SHU (4B-4L-52)_

_P. O. Box- 3481_

_Corcoran, CA. 93212_

On _June 10,_ , 20 _13_ , I served the attached: _Amended Complaint_
_Civil Rights Act 42 U.S.C. Section 1983, 1981,_
_2000A, 12101 and 12102 . Demand For Jury Trial_
(Describe Document)

On the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope,

with the postage thereon fully paid, in the United States Mail in a deposit box so provided

at the above-named Correctional Institution in which I am presently confined. The envelope

Is addressed as follows :
_In the Clerk's office, For the United states_
_District Court For the Eastern District of California_
_2500 Tulare street, Room #1501_
_Fresno, CA. 93721_

I declare under penalty of perjury the laws of the United States of America that the foregoing is

true and correct.

Executed on _June 10, 2013_ _Reno Rios E33173_
(Date) (Defendant's Signature)
_In pro per_

(I)