# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO FUENTES RIOS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GIPSON, et al.,<br><br>　　　　　Defendants. | Case No. 1:12-cv-01334-LJO-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT GRANTED AS TO PLAINTIFF'S DENTAL CLAIM**<br><br>**(Doc. 65)**<br><br>**TWENTY-ONE DAY DEADLINE** |

## INTRODUCTION

Plaintiff, Reno Fuentes Rios, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action on August 16, 2012. Following remand from the United States Court of Appeals for the Ninth Circuit, this action is proceeding on Plaintiff's claims in the First Amended Complaint for inadequate medical treatment for his chronic conditions (i.e., asthma and nerve pain) and dental issues.[1] On November 1, 2016, Defendants filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure,[2] raising Plaintiff's failure to exhaust the available administrative remedies on his dental claims[3] as required by 42 U.S.C. § 1997e(a) before filing suit. (Doc. 65.) Plaintiff filed his opposition.[4] (Doc. 72.) Defendants

---

[1] (Doc. 12, Amend. Compl., ¶¶19-22, 25, 26, 29, 30-32, 48-64; Doc. 21, 9th Cir. Memo; Doc. 23, 9th Cir. Mandate.)

[2] The Federal Rules of Civil Procedure will be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

[3] Although Defendants' initial motion addressed all of Plaintiff's claims, the motion was withdrawn as to Plaintiff's claim of deliberate indifference regarding medication for chronic conditions such as asthma. (Doc. 75, 4:19-22.) The motion is thus only applicable to Plaintiff's dental claim.

[4] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies with Defendants' moving papers as well as separate order from this Court. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Docs. 29, 30.) Further, Plaintiff asserts that "Defendants

1

filed their reply. (Doc. 75.) The motion is deemed submitted. L.R. 230(*l*).

For the reasons discussed below, the Court finds that Defendant's motion should be GRANTED as to Plaintiff's dental claims.

## **FINDINGS**

### A.  Legal Standards

#### 1.  Summary Judgment Standard

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment under Rule 56. *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Plaintiff's filings must be liberally construed because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted). All inferences must be drawn in the light most favorable to Plaintiff as the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

//

---

withheld information that Plaintiff had have (sic) requested through discovery interrogatories and the production of documents to properly oppose their motion for summary judgment in regard to the claims involved in this action." (Doc. 72, 2:13-17.) However, although the Second Informational Order informed Plaintiff of the option, he did not file a request to postpone consideration of Defendants motion to resolve discovery disputes as provided by Rule 56(d). In fact, while Plaintiff filed a motion to compel discovery responses, he did not do so until nearly four months after filing his one-hundred-forty-three (143) page opposition.

1      A defendant is only entitled summary judgment if the undisputed evidence viewed in the light most favorable to the prisoner shows that administrative remedies were available to Plaintiff which he failed to exhaust. *Williams*, at 1166. If this is shown, the action should be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 2. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* --- F.3d ---, 2016 WL 142601, *2 (9th Cir. Jan. 12, 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532; 122 S.Ct. 983 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth,* 532 U.S. at 738. However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

//
//

3

### 3. Summary of CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners welfare, Cal. Code Regs., tit. 15, § 3084, *et seq.*[5] Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, a CDCR inmate initiates the grievance process by submitting a Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a). An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or a related set of issues, per IA in the space provided on the first page of the IA form and one attached page (which must be on the prescribed Attachment form "602-A") in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2), & (4). All involved staff members are to be listed with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents must be submitted with the IA; if they are not available, copies may be submitted with an explanation as to why the originals are not available, and are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b).

With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level within thirty days, and thereafter to the third-level. Tit. 15 § 3084.2, & .7. First and second-level appeals must be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States Postal Service. Tit. 15 § 3084.2(d).

---

[5] Sections of Title 15 of California's Code of Regulations are hereinafter referred to as "§ ****." Any reference to other code sections shall so indicate.

**B.    Defendants' Motion on Exhaustion per 42 U.S.C. § 1997e(a)**[6]

Defendants assert that Plaintiff did not exhaust available administrative remedies on his dental claims before filing, entitling them to judgment. (Doc. 65.) The Court must identify the allegations of Plaintiff's dental claim and ascertain whether he filed any IAs on them, and if so, whether Plaintiff complied with CDCR's process. If Plaintiff did not comply with the CDCR process, the question becomes whether the process had been rendered unavailable to him. *Ross*, 136 S. Ct. at 1859; *Sapp*, 623 F.3d at 823.

### 1.    Plaintiff's Dental Claim

Plaintiff alleges that when he was transferred to the California State Prison in Corcoran, California ("CSP-Cor"), he was scheduled to see the dentist for several examinations because his central incisor had been extracted and Plaintiff had gum damage and a severe infection from where his left side molar was extracted. (Doc. 12, FAC, p. 16.) Plaintiff alleges that an x-ray was taken and the dentist he initially saw recommended that Plaintiff have a "partial artificial tooth replacement." (*Id.*) Another dentist indicated that the "partial" Plaintiff received was defective and recommended Plaintiff be "re-issued a new one when the next central incisor tooth is extracted." (*Id.*) When Plaintiff's second central incisor was extracted, Plaintiff asked for repair of his "partial." (*Id.*)

On March 1, 2011, and in several subsequent interviews, Defendant Dr. Briggs interviewed Plaintiff and conducted several examinations, but would not recommend Plaintiff for a partial artificial tooth replacement unless four other teeth were extracted, indicating that they would eventually need to be extracted and doing it now would save the CDCR money. (*Id.*, pp. 16-17.) On January 11, 2012, Plaintiff agreed to extract only a molar on his left side because it was loose, but refused to have the other three teeth extracted because he did not have any problem with them. (*Id.*, p. 16.) In several interviews, Dr. Briggs insisted that Plaintiff should have all four teeth removed to save time and money since they would all eventually need to be extracted. (*Id.*, p. 17.)

---

[6] All references to pagination of specific documents pertain to those as indicated on the upper-right corners via the CM/ECF electronic court docketing system.

Plaintiff responded that the dentist at the previous facility knew the "partial" Plaintiff had been provided with was defective and was to be replaced, and that he only had two molars on his right side with which to chew his food. (*Id.*) Plaintiff noted that since those were among the teeth that Dr. Briggs wanted removed, if Plaintiff agreed to have all four teeth removed, he would be without any teeth to chew his food for the 90 to 120 days it would take to get artificial teeth. (*Id.*) Dr. Briggs stated that the state food was soft and did not need to be chewed and that since other prisoners had survived the process, Plaintiff would survive it, too. (*Id.*) Dr. Briggs repeatedly denied Plaintiff's request for replacement partial teeth unless Plaintiff would agree to remove the four teeth Dr. Briggs felt would eventually need to be removed; alternatively, Plaintiff could wait until he got released to "main-line" where the facilities provide tooth implants. (*Id.*, pp. 17-18.)

Dr. Shampain interviewed Plaintiff on March 26, 2012, and Plaintiff explained that he could not adequately chew his food and requested artificial tooth implants. (*Id.*, p. 18.) Dr. Shampain denied Plaintiff's request indicating that they were not allowed to provide teeth implants "due to *Perez v. Tilton*" and that sooner or later, Plaintiff would have no choice. (*Id.*)

On May 11, 2012, Dr. Pringle interviewed Plaintiff regarding IAHC 12049729. (*Id.*) Plaintiff repeated everything that he had previously told Dr. Briggs and Dr. Shampain. (*Id.*) Dr. Pringle stated that he agreed with Dr. Briggs and Dr. Shampain. (*Id.*, pp. 18-19.) Because of the actions by Dr. Pringle, Dr. Briggs, and Dr. Shampain, Plaintiff alleges that the third level of health care appeals refused to process IA #12049729. (*Id.*, p. 19.)

### a. IA HC 12049729

#### (1) Defendants' Evidence

Defendants' evidence shows that, from February 2007 to September 2015, Plaintiff submitted only two health care appeals relating to conditions at Corcoran that were accepted for third level review which Plaintiff exhausted: IA HC 12049729 and IA HC 11013761. (Doc. 65-3, DUF No. 11.) IA HC 12049729 involved Plaintiff's claims of inadequate dental care, specifically with regard to the denial of dental implants for missing teeth. (*Id.*, DUF No. 12.) In the First

Amended Complaint, Plaintiff alleges that IA HC 12049729 was the IA in which he attempted to exhaust his dental care issues. (Doc. 12, p. 19.) This IA was denied at the Third Level of review on July 5, 2013. (Doc. 65-3, DUF No. 13)

### (2) Plaintiff's Opposition

In his opposition, Plaintiff argues that he submitted numerous inmate grievances addressing the medical issues in this action. (Doc. 72, pp. 6, 47-51, 57-59, 81-84.)[7] However, IA HC 12049729 is the only one Plaintiff submitted which addressed his dental issue.

The evidence shows Plaintiff initiated IA HC 12049729 on February 29, 2012. (Doc. 72, pp. 16, 39, 72-74.) It was accepted at the First Level and was forwarded to health care staff for review and processing on March 5, 2012. (*Id*., pp. 39, 75.) It was denied at the First Level that same day. (*Id.*, p. 78.) On April 5, 2012, Plaintiff submitted this IA for Second Level review. (*Id.*, p. 76.) It was denied at the Second Level on May 11, 2012. (*Id.*, pp. 40, 79-80.)

On May 27, 2012, Plaintiff submitted this IA for Third Level review. (Doc. 72, pp. 16, 41, 82, 83.) Plaintiff contends that the Third Level erroneously rejected this IA on July 23, 2012, which amounted to a denial of this IA for exhaustion purposes since it was rejected on a procedural basis which had not been raised as a defect by either the First or Second Level review. (*Id*., p. 16.) Plaintiff does not submit admissible evidence to show that this IA was rejected at the Third Level on July 23, 2012. Plaintiff also argues that he resubmitted this IA on August 8, 2012, (apparently in response to the contended July 23, 2012 rejection), but also fails to submit evidence to support this contention. (*Id*., p. 18.)

Instead, the evidence Plaintiff submitted shows that the Third Level rejected this IA on August 13, 2012, because it was not on the approved form and Plaintiff's additional comments were not "on the new departmental CDCR 602A (08/09) Inmate/Parolee Appeal Attachment Form." (*Id.*, p. 17, 41, 84.) Plaintiff contends that this rejection was improper since the First and Second Levels accepted this IA as submitted. (*Id.*) However, "(e)rroneous acceptance of an

---

[7] Although Plaintiff contends he submitted thirty-five (35) IAs between 2007 and 2013, which were not properly processed, Plaintiff fails to submit any evidence to show that any of those grievances addressed the dental issues in dispute here. (*See* Doc. 72, p. 15, 17.) Plaintiff's argument references paragraph 28 of his declaration in support of his contention; however, that paragraph discusses Plaintiff's participation in a mass hunger strike on July 8, 2013, and does not reference any dental issues. (*Id.*, p. 44, ¶ 28.)

7

appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal." Tit. 15 § 3084.6(a)(5). Thus, the Third Level was allowed to reject this IA for noncompliance with appeal procedures.

The August 13, 2012, Third Level rejection informed Plaintiff that he could resubmit this IA, but must remove the additional white page(s) of comments and submit additional comments only on the approved form. (*Id.*) Plaintiff argues that the delay between his submission of this IA to the Third Level on May 27, 2012, and this rejection caused administrative remedies to be unavailable to him since "the third level chief took over 60 days to response (sic). . . " in violation of § 3084.8(c)(3). (*Id.*, p. 18.)

Plaintiff resubmitted this IA for Third Level review on August 20, 2012. (*Id.*, pp. 41, 86-87.) The Third Level rejected it on December 5, 2012, for being on the wrong form and because Plaintiff's comments exceeded the allowable limits. (*Id.*, pp. 41-42, 88-89.) Plaintiff was allowed to resubmit the appeal within thirty (30) calendar days. (*Id.*) Plaintiff timely resubmitted it for Third Level review on December 16, 2102. (*Id.*, p. 18, 91.) On April 5, 2013, the Third Level issued a notice to Plaintiff that, due to a large backlog of cases and unforeseen delays, this IA remained assigned to an examiner and that a response would be returned to Plaintiff "shortly." (*Id.*, p. 18, 92.) The Third Level denial, which exhausted administrative remedies on this appeal, ultimately issued on July 5, 2013. (*Id.*, pp. 42, 94-95.)

Plaintiff argues that, because he submitted this IA to the Third Level on May 27, 2012, the Third Level denial "took over one year" which violated the sixty (60) day response deadline of § 3084.8(c)(3). This contention is disingenuous as it implies that nothing occurred on this IA between his May 27, 2012, submittal and the July 5, 2013, denial. Plaintiff's own evidence, as previously discussed, indicates that after he initially submitted this IA for Third Level review, it was twice rejected and he twice resubmitted it. The evidence further establishes that on April 5, 2013, Plaintiff received correspondence from the Third Level that the reason it had not been reviewed up to that point was due to a large backlog of cases and unforeseen delays.

Plaintiff then argues that, because of the delayed response by the Third Level and given the contents of the April 5, 2013 notice regarding it, "Plaintiff had no choice, but to file his

8

complaint [in this action] on June 13, 2013." (Doc 72, p. 7.) Plaintiff contends he had no pending 602 grievances regarding to his dental issues on June 13, 2013. (*Id*.) However, this argument is without merit as June 13, 2013, is the date that the First Amended Complaint was filed, (*see* Doc. 12) -- not the date he initiated this action (*see* Doc. 1).

The PLRA requires that all available administrative grievances be exhausted before Plaintiff initiated this action, not before Plaintiff filed the version upon which he now proceeds. It is possible that Plaintiff believes that he was required merely to exhaust claims before filing the operative, amended complaint. It is true that a plaintiff may proceed on new cognizable claims stated in an amended complaint if his administrative remedies were exhausted after the filing of the original complaint, but before the filing of the amended complaint. *Rhodes v. Robinson*, 621 F.3d 1002, 1003 (9th Cir. 2010). However, the claims must be "new" – i.e., the events giving rise to them must have not occurred until after the filing of the original complaint. (*Id.*). Plaintiff's dental claim is not "new" by this standard, but was instead raised by Plaintiff in the original Complaint which he filed to initiate this action. (*See* Doc. 1, pp. 17-21.)

### (3) Defendants' Reply

In their reply, Defendants acknowledge that IA #12048729 covered Plaintiff's dental claims in this action and that Plaintiff pursued it to the third and final level of review. (Doc. 65, pp. 8-9 and Doc. 75, pp. 4-5, citing DUF 10, 11, 13, 29.) However, Defendants reiterate that since IA #12049729 was denied at the third level of formal review on July 5, 2013, Plaintiff failed to exhaust it before he initiated this action nearly one year earlier, on August 16, 2012. (*Id*.)

Defendants contend that that the delay between Plaintiff's submission of this IA to the Third Level on May 27, 2012, and the August 13, 2012, rejection caused administrative remedies to be unavailable because a response from the third level is to be completed "within sixty *working days* from date of receipt by the third level Appeals Chief." 15 CCR § 3084.8(c)(3) (emphasis added). As Defendants correctly point out, when federal holidays and weekends are considered, sixty working-days from May 27, 2012, is on August 21, 2012. Therefore, the Third Level August 13, 2012, response was within the required sixty working-day deadline. (Doc. 72 at 84.) Administrative remedies thus remained available to Plaintiff when he filed this action on August

16, 2012.  This is further evidenced by the fact that Plaintiff resubmitted this IA for Third Level review only four days after he filed this action.  (*See* Doc. 72, pp. 41, 86-87 (according to his own evidence, Plaintiff resubmitted this IA for Third Level review on August 20, 2012).)

Thus, Defendants are entitled to summary judgment on Plaintiff's dental claims since Plaintiff had not exhausted all available administrative remedies when he filed this action on August 16, 2012.[8]

## RECOMMENDATION

Based on the foregoing, the Court **HEREBY RECOMMENDS** that Defendants' motion for summary judgment, filed on November 1, 2016, (Doc. 65), be **GRANTED** as to Plaintiff's dental claim and this claim be dismissed without prejudice based on Plaintiff's failure to exhaust available administrative remedies prior to filing suit.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within 21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 17, 2017**              /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[8] Any subsequent delays at the Third Level of review are not relevant since Plaintiff filed this action before they occurred, while the administrative remedy process was available.